UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
− − − − − − − − − − − − − − − − − − − − −  X

SPV-LS, LLC, FINANCIAL LIFE SERVICES LLC, :
SPV II LLC, LIFE TRADING TRUST,                          : Case No ___15-6231_____

                              Plaintiffs,

          vs.

NACHMAN BERGMAN, INDIVIDUALLY and as
TRUSTEE OF THE N BERGMAN INSURANCE              **JURY TRIAL DEMANDED**
TRUST, THE REPRESENTATIVE OF THE
ESTATE OF NANCY BERGMAN, DAVID KOHN,
HILLEL SCHREIBER, MICHAEL LICHENSTEIN,
MOSHE WEISS, MOTI AKSLER, YOSSI
HOFFMAN, JACOB HERBST, WILLIAMSBURG
SUPREME, LLC, BENTZION MILLER, HERMAN
SEGAL, and CAMBRIDGE SETTLEMENTS, LLC

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  **X**

## COMPLAINT

          SPV-LS, LLC ("SPV"), FINANCIAL LIFE SERVICES LLC ("FLS"), SPV II LLC

("SPV II") and LIFE TRADING TRUST ("LTT") (collectively the "Plaintiffs"), by its attorneys

Locke Lord LLP, as and for its complaint against defendants NACHMAN BERGMAN,

("Nachman"), individually and as TRUSTEE OF THE N BERGMAN INSURANCE TRUST

(the "Trust"), THE REPRESENTATIVE OF THE ESTATE OF NANCY BERGMAN (the

"Estate"), DAVID KOHN ("Kohn"), HILLEL SCHREIBER ("Schreiber"), MICHAEL

LICHENSTEIN ("Lichenstein"), MOSHE WEISS ("Weiss"), MOTI AKSLER ("Aksler"),

YOSSI HOFFMAN ("Hoffman"), JACOB HERBST ("Herbst") and WILLIAMSBURG

SUPREME, LLC ("Williamsburg Supreme"), BENTZION MILLER ("Miller"), HERMAN

SEGAL ("Segal") and CAMBRIDGE SETTLEMENTS, LLC ("Cambridge Settlements")

(collectively the "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      This action for fraud arises out of the Life Insurance Policy Purchase and Sales Agreement (the "Agreement"), that Plaintiff FLS and Defendant Nachman Bergman, as Trustee of the Trust, entered into on November 4, 2009.

2.      Upon information and belief, and unbeknownst to FLS at the time of the transaction, Nachman was acting in concert with all of the above-named Defendants to fraudulently conceal and misrepresent material information with the intent of inducing FLS to purchase the subject life insurance policy.

3.      At the time of the transaction, FLS reasonably relied on the fraudulent misrepresentations of the Defendants. However, certain of the Defendants' misrepresentations became apparent to FLS after the transaction. FLS attempted to rescind the Agreement pursuant to a provision therein that granted it such right in the event FLS discovered that any essential information provided by the Seller in an effort to induce the purchase, including life expectancy reports, materially varied from FLS's independent findings. The Agreement also granted FLS the right to pay premiums to prevent the policy from lapsing during the due diligence period. Further, the Agreement provided that the seller would repay such premiums if FLS elected to rescind.

4.      Rather than rescind the Agreement, the Defendants have instead engaged in a five-year campaign of continued deception, complete with bankruptcy and mail fraud, in an attempt to claim the $10,000,000 death benefit of the subject life insurance policy.

## PARTIES

5.      Plaintiff SPV is a Delaware limited liability company owned by Krasnerman 2012 Irrevocable Trust with principal place of business in Sioux Falls, SD.

6.      Plaintiff FLS is a Delaware limited liability company with its principal place of business in Stamford, Connecticut.

7.      Plaintiff SPV II is a Delaware limited liability company owned by Krasnerman 2012 Irrevocable Trust with principal place of business in Sioux Falls, SD.

8.      Plaintiff LTT is a trust established under the law of Delaware with its principal place of business in Wilmington, Delaware.

9.      Upon information and belief, Defendant the Representative of the Estate of Nancy Bergman is Sym Jared Bergman, who became Personal Representative of the Estate of Nancy Bergman pursuant to Letters Testamentary issued on June 17, 2015, by the Surrogate's Court of the State of New York, Nassau County. Defendant the Estate is deemed to be a New York citizen.

10.      Upon information and belief, Defendant Nachman Bergman was the original Trustee of the N Bergman Insurance Trust dated December 18, 2006 (the "Trust"), such Trust having been established under the laws of the State of New York and is deemed to be a citizen of New York.

11.      Upon information and belief, Defendant David Kohn is an insurance and life settlement broker having a principal place of business in Brooklyn, New York.

12.      Upon information and belief, Defendant Michael Lichenstein resides at or has a principal place of business at 4704 13th Avenue, 2nd Floor, Brooklyn, NY 11219.

13.      Upon information and belief, Defendant Moshe Weiss is an owner of Moishee Deli, with principal place of business at 4023 13th Avenue, Brooklyn, New York 11218.

14.     Upon information and belief, Defendant Moti Aksler operates a company called Wireless New York Corp., with principal place of business at 1274 49th Street, Brooklyn, New York 11219.

15.     Upon information and belief, Defendant Williamsburg Supreme, LLC is a New York Domestic Limited Liability Company with a mailing address of 1706 50th Street, Brooklyn, New York 11204.

16.     Upon information and belief, Defendant Yossi Hoffman resides or has a principal place of business at 1093 Flushing Avenue, Brooklyn, New York 11237.

17.     Upon information and belief, Defendant Jacob Herbst resides at 5017 17th Avenue, Brooklyn, New York 11204.

18.     Upon information and belief, Defendant Bentzion Miller is a life settlement broker working for Cambridge Settlements, LLC, at the address 4512 Farragut Road, Brooklyn, New York 11203.

19.     Upon information and belief, Defendant Hillel Schreiber is a life settlement broker working for Cambridge Settlements, LLC, at the address 4512 Farragut Road, Brooklyn, New York 11203.

20.     Upon information and belief, Defendant Cambridge Settlements, LLC is a New York Domestic Limited Liability Company with a principal place of business at 4512 Farragut Road, Brooklyn, New York 11203.

## JURISDICTION AND VENUE

21.     For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the State of Delaware, and defendants are citizens of the State of New York. The matter in controversy exceeds the

sum of $75,000.00, exclusive of interest and costs. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims stated herein occurred in this district. Additionally, Defendants are subject to this Court's personal jurisdiction with respect to this action.

## STATEMENT OF FACTS

### I.     Issuance of Certificate and Formation of the Trust

23.     On information and belief, on or around October 2006, David Kohn ("Kohn"), an insurance and life settlement broker, approached Nancy Bergman ("Nancy") with an offer to sell her a life insurance policy issued by Transamerica Life Insurance Company ("Transamerica").

24.     On information and belief, and substantial documentary evidence, Nachman and Nancy accepted Kohn's offer and began the process of obtaining a life insurance policy from Transamerica.

25.     On information and belief, on or about October 10, 2006, Transamerica ("Transamerica") issued a group life insurance certificate, number 65060001 in the amount of $10,000,000.00 to Nancy (the "Certificate"), attached to this Complaint as Exhibit A, with the understanding that it would be transferred to The N Bergman Insurance Trust once the Trust was formed.

26.     The Certificate lists the owner as "The N Bergman Insurance Trust dated December 18, 2006," however the Trust was not yet formed at this time.

27.     On December 18, 2006, Nancy, as grantor, and Nachman, as Trustee, signed and acknowledged the trust agreement creating "The N Bergman Insurance Trust" (the "Trust

Agreement"). On information and belief, Nancy then transferred ownership of the Certificate to the Trust.

28.     On information and belief, Nachman is the grandson of Nancy.

29.     The Trust Agreement is notarized by Richard Herbst, Notary Public in the State of New York, # 01HE5035248.

30.     The Trust Agreement establishes that The Trust is situated in New York.

**II.     Misrepresentations in the Policy Application**

31.     On or about January 3, 2007, Nancy and Nachman signed and dated an application for life insurance from Transamerica on behalf of Nancy (the "Application"), attached to this Complaint as Exhibit **B**.

32.     The Application is also signed by Kohn as witness.

33.     The Application lists Nancy's occupation as "Retired" and her annual income as "$950,000+."

34.     The Application also lists the owner's name and beneficiary's name as "Trust Pending."

35.     Attached to the Application is a non-medical health history form signed and dated by Nancy on January 3, 2007 (the "Non-Medical History Form").

36.     The Non-Medical History Form is signed by Kohn as agent and witness.

37.     Also attached to the Application is a New York Questionnaire, which is signed and dated by Nachman on January 3, 2007 (the "New York Questionnaire").

38.     The New York Questionnaire is also signed by Kohn as agent, and dated January 3, 2006.[1]

_____

[1] Plaintiffs assume this is an error and that David Kohn also signed the New York Questionnaire on January 3, 2007.

39.     In the New York Questionnaire, Nachman represented to Transamerica that the owner of the Certificate (the Trust) was a New Jersey trust.

40.     However, also attached to the Application is a signed amendment (the "Amendment"), dated March 22, 2007.

41.     The Amendment lists the owner/beneficiary as the Trust, i.e., "The N Bergman Insurance Trust Dated December 18, 2006" with the owner's address as "c/o Nachman Bergman, 557 Central Ave Apt 1B, Cederhurst, NY 11516."

42.     Also attached to the Application is a personal supplement signed and dated by both Nancy and Nachman, on January 3, 2007, and purportedly signed in Lakewood, New Jersey, (the "Personal Supplement").

43.     The Personal Supplement is also signed by Kohn as witness.

44.     In the financial information section of the Personal Supplement, Nancy's annual income for 2006 is listed as $1.235 million and her annual income for 2007 is estimated at $1.035 million.

45.     In the financial information section of the Personal Supplement, Nancy's total assets for 2006 are listed as $1.235 million and her estimated total assets for 2007 are estimated at $1.035 million.

46.     In the financial information section of the Personal Supplement, Nancy's total liabilities for 2006 and her estimated total liabilities for 2007 are $0.

47.     On information and belief, on or about January 18, 2007, Nachman or Nancy or Kohn mailed the Application to Transamerica.

48.     On March 15, 2007, Transamerica issued a life insurance policy to Nancy with a face amount of $10,000,000 (the "Transamerica Policy"), attached to this Complaint as Exhibit C.

49.     The Transamerica Policy contains a certificate of insurance with initial and period premium amounts that differ from the initial Certificate, dated October 10, 2006.

50.     Upon information and belief, the defendants herein, and Nancy Bergman, the Estate's decedent, prepared and submitted false information to Transamerica concerning Nancy Bergman's financial circumstances, her need for insurance and her intentions for benefitting members of her family and others.

51.     The Estate now alleges in an action in South Dakota that Nancy executed in 2006 a legal document purportedly appointing Malka Silberman ("Malka") as trustee of the Trust, pre-dated March 27, 2008.

52.     Upon information and belief, if such allegation is true, then Nancy provided such document for the sole purpose of confusing authority to assign interests in the Policy to a prospective purchaser like FLS.

53.     Upon information and belief, Nancy's purpose in executing an amendment not intended to have present effect was for the purpose of frustrating the legal rights otherwise conveyed to a prospective purchaser like FLS.

54.     Upon information and belief, Nancy intended at the time that she executed the purported, pre-dated amendment that it be used in exactly the manner it is being used by Malka and the defendants in connection with the current proceedings in South Dakota.

55.     Upon information and belief, Nancy agreed with the defendants (other than her Estate) that she would make herself available for medical examinations and to provide such other information and authorizations as might be required to transfer the Policy.

## III.    Misrepresentations During Negotiations to Purchase the Policy and Due Diligence

56.     In or about August 2009, after the Policy had passed the two year incontestability period, Mindy Brach, a life settlement broker at Executive Brokerage in Brooklyn, New York, contacted Plaintiff FLS about purchasing the Transamerica Policy in August of 2009.

57.     FLS did not engage in negotiations with Ms. Brach to purchase the Transamerica Policy.

58.     In October of 2009, Kohn approached FLS about purchasing the Transamerica Policy.

59.     On October 22, 2009, after preliminary discussions with Kohn, FLS forwarded to Kohn at his Brooklyn, New York office, an offer to purchase the Transamerica Policy.

60.     Upon information and belief, on October 23, 2009, Kohn from his Brooklyn, New York office, faxed an executed offer letter to Michael Krasnerman, the Chief Executive Officer of FLS, under which FLS would purchase the Transamerica Policy for $1.35m and Kohn would receive a $50,000.00 commission.

61.     Kohn signed the documentation, in which he certified as the broker that the Seller, identified as the Trust by its Trustee Nachman Bergman, had not "directly or indirectly transferred any interest in the Policy of the Seller to any person or entity."

62.     Following Kohn's execution of the offer documentation, FLS then engaged in a process of due diligence to verify the Trust's rights in the Policy, the accuracy of the life

expectancy projections FLS had been provided, medical reports and other material aspects of the transaction.

63.     This due diligence process began in the late fall of 2009. As part of the due diligence process, Mr. Krasnerman spoke with Kohn and Defendant Schreiber, a life settlement broker from Brooklyn New York, working on behalf of Nachman. Kohn and Schreiber held themselves out to Mr. Krasnerman as employees of Cambridge Settlements.

64.     Upon information and belief, Kohn and Schreiber are indeed employed by Cambridge Settlements.

65.     One aspect of proof FLS sought as part of its due diligence was assurance that the individuals who were to execute documents were in fact personally involved. To this end, FLS demanded copies of Social Security cards and passports of the individuals involved. Schreiber forwarded the requested identification to FLS from his Brooklyn, New York office. With respect to Nachman, Schreiber faxed FLS on October 23, 2009 a photocopy of Nachman's passport and a photocopy of Nachman's Social Security Card.

66.     Schreiber also forwarded documents calculated to verify that FLS was dealing with Nachman's grandmother and her health information in granular detail. Schreiber transmitted a copy of Nancy's passport, a copy of Nancy's Social Security Card, and a five page medical form dated November 6, 2009 signed by Nancy, all sent from his Brooklyn, New York office. The medical form recounts in considerable detail Ms. Bergman's medical conditions, which FLS verified against records obtained from her physicians.

67.     On information and belief, Mr. Schreiber received these documents directly from Nachman and/or Nancy.

68.     The following addresses for the Trust and Nachman were furnished to FLS:

      A.     3 West Fessler Drive, Monsey, NY 10852;

      B.     1247 E. 13th Street, Brooklyn, NY 11230.

69.     FLS also demanded proof that the Trust had funded the premiums on the Transamerica policy.

70.     Schreiber provided FLS with copies of checks written from the Trust's account, located in Brooklyn, New York, to pay premium payments to Transamerica.

71.     Each check provided by Schreiber bears a signature of Nachman Bergman and the same account number: 792349103.

72.     On October 30, 2009, on information and belief, Nachman provided FLS with a Settlement and Payment Request Form, which indicated that FLS should deliver the "Net Purchase Price" for the Transamerica Policy to the Trust by wire transfer to an account at "TD Bank, Prospect Circle, Brooklyn, NY" bearing the same account number as the premium checks provided by Schreiber: 792349103 (the "TD Bank Account").[2] The Settlement and Payment Request Form was signed by Nachman as Trustee for the N Bergman Insurance Trust.

73.     As further due diligence, FLS demanded production of two legal documents which Transamerica insisted that the Trust complete: a "Beneficiary's Consent to Transfer Of Policy, Waiver of Interest and Release of Claims," and a "Verification of Trust Agreement for Administration of Life Insurance Policies."

74.     Both of these documents were executed on October 30, 2009, by Nachman as Trustee for the Trust, and, upon information and belief, forwarded to FLS from Brooklyn, New York.

---

[2]     The copies of checks provided to FLS by Schreiber bear the name "Commerce Bank." On information and belief, TD Bank Group acquired Commerce Bank in early 2008. The account number on the checks and the Settlement and Payment Request Form are identical.

75.     FLS also obtained a sworn affidavit from Nachman, as Trustee of the Trust, executed on October 30, 2009, in which Nachman swears that there has been no manipulation of the medical information delivered in connection with the efforts to sell the Transamerica policy.

76.     The documents provided to FLS by Nachman, acting as the Trustee, included warranties and representations that the Policy had a clear title and that there were no investors involved.

77.     Two different notaries confirmed the signature of Nachman on all of these documents: Jerome Goldman and Elchonon Kass, both Notaries Public in the State of New York qualified in Kings County. Mr. Goldman's notary number is 02005074020 and Mr. Kass's notary number is 01KA5036527.

78.     Pursuant to the Life Insurance Policy Purchase and Sales Agreement between Nachman, as Trustee of the N Bergman Insurance Trust, and Michael Krasnerman, as managing member of FLS, dated November 4, 2009 (the "Sale Agreement"), FLS agreed to purchase the Transamerica Policy from the N Bergman Insurance Trust for $1,350,000.

79.     Pursuant to the Agreement, upon execution, FLS was authorized to pay the insurer premiums necessary to prevent the Policy from entering a grace period until Conditions Precedent provided for in the Agreement were met. The Sale Agreement also provided that if any material representation statement, or warranty by Seller proved to have been incorrect when made, or if Seller breached any representation or warranty or failed to perform any covenant, FLS could, pursuant to section 7(k) of the Agreement, require that Seller immediately repurchase the Policy plus reimburse FLS any premiums advanced as well as pay FLS a Termination Charge.

80.     Alternatively, FLS could, under section 7(aa), move forward with the transaction but reduce the purchase price by $675,000.00 based on the fact that Essential Information provided by the Seller, specifically life expectancy reports, materially varied from updated Essential Information obtained after execution of the Agreement.

81.     Each page of the Sale Agreement is initialed by Nachman and the Sale Agreement is signed by Nachman on the last page.

82.     Nachman's signature was acknowledged by Jerome Goldman, Notary Public for the State of New York, No. 02005074020 on October 30, 2009, and on information and belief Nachman executed all of the relevant documents in Brooklyn, New York.

83.     Defendant Schreiber and Defendant Bentzion Miller also provided FLS with sworn affidavits, on October 30, 2009, attesting to the fact that no attempts had been made to mislead FLS.

## IV.    Certain Misrepresentations Become Apparent

84.     In December of 2009, following execution of the Sale Agreement, and during the continuing due diligence of the Insured, the Policy and the transaction, FLS learned from Schreiber that the Trust had failed to make a required payment of a premium to Transamerica and that the Policy had entered a "grace period."

85.     Schreiber forwarded to FLS a notice from Transamerica to "The N Bergman Insurance Trust, c/o Nachman Bergman, 1247 E. 13th Street, Brooklyn, NY 11230," alerting Nachman that this was a final notice as to impending lapse of the policy for non-payment of premiums.

86.     The Transamerica notice also confirmed that, to Transamerica's knowledge, the Trust owned the Policy and that Nachman was Trustee.

87.     The information on the Transamerica notice as to the owner of the Policy and the identity of the Trustee was entirely consistent with the results of FLS's due diligence to that point.

88.     Ultimately, FLS wired $64,500.00 to Transamerica on December 15, 2009, to prevent the Policy from lapsing.

89.     In late 2009, in connection with FLS's continuing due diligence effort to confirm the information Nachman, Kohn and Schreiber had provided, FLS obtained a life expectancy report from 21st Services, which showed that Nancy's health and life expectancy were materially different from the information that had been provided to FLS. Specifically, the 21st Services life expectancy report reflected that Nancy's life expectancy was 4 months longer than was reflected in the documentation provided to FLS by Nachman, Nancy, Kohn, Schreiber, and/or the Trust.

90.     Between December of 2009 and September of 2010, FLS and Nachman engaged in various negotiations to informally resolve the differences over life expectancy and policy valuation.

91.     Following FLS's failed efforts to make the Trust take back the Policy and reimburse FLS for the premiums and expenses FLS had advanced, and on March 10, 2010, FLS informed Nachman of FLS's intent to wire the Trust's TD Bank Account a wire transfer of $610,500.00, representing the alternative purchase price set forth in the Sale Agreement.

92.     On that same date, FLS attempted to wire the said amount to the Trust's TD Bank Account located in Brooklyn, New York, using the information provided to FLS by Nachman and/or the Trust during the due diligence period. The wire was rejected.

93.     FLS then sought to cancel the Sale Agreement and sent a notice to the Trust to its Brooklyn, New York address, but the Trust did not respond to the offers to rescind.

## V.    The Eastern District of New York Action, Jacob Herbst and Further Misrepresentations

94.     In fall of 2010, following the Trust's refusal to accept FLS's wire transfer or rescind the Sale Agreement, FLS filed a lawsuit against the Trust in the United States District Court for the Eastern District of New York before The Honorable Denis R. Hurley (the "EDNY Action"). FLS provided The Trust with notice of the lawsuit by serving a summons and complaint on the Nachman as trustee for the Trust at 557 Central Avenue, #1B, Cedarhurst, New York 11516 and 3100 Bancroft Road, Apartment D, Baltimore, Maryland 21215.

95.     No one appeared in the EDNY Action on behalf of the Trust and no answer was filed. On December 9, 2010, the Clerk of the Court for the Eastern District of New York entered a default against the Trust.

96.     On January 19, 2011, FLS filed a motion for default judgment, and the motion was referred to Magistrate Judge William D. Wall by order of Judge Hurley, dated February 7, 2011 (the "Referral Order"). The Referral Order was served on the Trust on February 7, 2011, by mailing the Referral Order to Nachman, as trustee for the Trust, at 557 Central Avenue, #1B, Cedarhurst, New York 11516 and 3100 Bancroft Road, Apt #D, Baltimore, Maryland 21215, and by e-mailing a copy of the Referral Order to Nachman, as trustee for the Trust, at the e-mail address "nachman18@aol.com."

97.     Magistrate Judge William D. Wall issued his report and recommendation on June 27, 2011 (the "Report"). The Magistrate recommended that FLS return the Policy to the Trust and be granted a money judgment against the Trust for the amount in premiums that FLS had advanced to such date.

98.     On July 11, 2011, FLS filed an objection to the Report. FLS challenged the Magistrate's recommendation as to relief, pointing out that the Trust had no funds to pay for the

premiums FLS had advanced, let alone to pay ongoing premiums to maintain the Policy, so if the Policy were transferred to the Trust, it immediately would lapse and FLS would not have money to satisfy neither the judgment nor the Policy. FLS proposed that the Policy be auctioned.

99.    FLS served this objection on Nachman, as Trustee of the Trust, by mailing it to both 557 Central Avenue #1B, Cedarhurst, New York 11516, and 3100 Bancroft Road, Apt #D, Baltimore, MD 21215, (collectively, the "Notices"), which represent the two physical addresses known to FLS's counsel as associated with Nachman Bergman. FLS also served the Report on Nachman, as Trustee of the Trust, by mailing it to 3100 Bankcroft Road, Apt #D, Baltimore, MD 21215 and faxing it to (718) 305-7591.

100.    On information and belief, Nachman received one or more of the Notices because, on July 28, 2011, attorney Mark J. Nussbaum appeared by letter in the EDNY Action, in which Mr. Nussbaum represented to the Court that he represented Nachman, as Trustee of the Trust. In his letter, Mr. Nussbaum requested that Judge Hurley extend the deadline to file objections to the Report to August 5, 2011.

101.    On August 5, 2011, Mr. Nussbaum filed a memorandum of law in opposition of FLS's objection to the Report.

102.    On September 22, 2011, Judge Hurley issued an order granting FLS's motion for default judgment and adopting the Report in part, and modifying in part. On September 28, 2011, Judge Hurley entered a judgment against the N Bergman Insurance Trust in the amount of $939,365.28, plus post judgment interest, in favor of FLS (the "FLS Judgment"). Notice of the FLS Judgment was sent to Nussbaum via the PACER Electronic Case Files system. After having received the FLS Judgment, Attorney Nussbaum wrote to Judge Hurley in the EDNY Action on October 31, 2011, and, again to Magistrate Judge Wall on November 8, 2011, both times

claiming to represent Nachman as Trustee of the Trust, opposing the sale of the Transamerica Policy that was proposed by FLS on October 25, 2011, and requesting that the Trust be permitted to control the sale process.

103.   On January 9, 2012, Magistrate Judge Wall signed an order directing the Transamerica Policy to be sold at auction which was to conclude on February 7, 2012 with the opening of bids, over the objections raised by Mr. Nussbaum on behalf of the Trust.

104.   On February 6, 2012, the day before the auction of the policy was set to conclude, an attorney named Mark Frankel, of Backenroth, Frankel and Krinsky, LLP, filed for bankruptcy on behalf of the Trust, commencing an action in the United States Bankruptcy Court for the Eastern District of New York before The Honorable Jerome Feller (the "Bankruptcy Action").

105.   Defendant Herbst signed the petition for bankruptcy and related schedules, under penalty of perjury, as trustee on behalf of the Trust. The petition and schedules provided that the penalty for making a false statement therein or concealing property is a fine of up to $500,000 or imprisonment for up to five years or both pursuant to 18 U.S.C. §§ 152 and 3571. Filing for bankruptcy or filing documents in a bankruptcy action in an effort to carry out or conceal a fraudulent scheme constitutes Bankruptcy Fraud in violation of 18 U.S.C. §157.

106.   Schedule F attached to the bankruptcy petition identifies Defendants Lichenstein, Weiss, Aksler, Hoffman and Williamsburg Supreme, LLC as "unsecured creditors" of the Trust.

107.   Upon information and belief, based on information interposed in an action commenced by Plaintiff SPV in the United States District Court for the District of South Dakota, these "creditor" Defendants were not simply lending money to the Trust, but were investors supplying the Trust with money that the Trust then used to pay premiums.

108.    Upon information and belief, these investors attempted to use the Policy as an investment vehicle, expecting a return on their investment once the death benefit paid out.

109.    Upon information and belief, there were other investors in the Policy beyond those listed on Schedule F. These investors included Defendant Herbst, Defendant Kohn and Defendant Segal.

110.    Attorney Frankel listed the Transamerica Policy as the sole asset of the N Bergman Insurance Trust in the Bankruptcy Action.

111.    On March 13, 2012, Attorney Paul K. Schwartzberg of the Office of the United States Trustee examined Herbst, who appeared as a representative of the Debtor, pursuant to Section 341 of the Bankruptcy Code (the "341 Meeting"). Counsel for FLS and Attorney Frankel both appeared and participated at the 341 Meeting.

112.    Herbst testified, under oath, that he was currently the Trustee of the Trust and that he had become Trustee of the Trust in late 2011 when Nachman resigned his position as Trustee because of conflicts at work.

113.    FLS filed three motions for relief from the automatic stay with respect to the Transamerica Policy in the Bankruptcy Action.

114.    At a hearing before Judge Fuller to address the Lift Stay Motion on March 6, 2012, Attorney Frankel presented Herbst as Trustee of the Trust.

115.    Herbst and Attorney Frankel both represented that the Trust still had rights in the Policy notwithstanding the directions of FLS Judgment signed by Judge Hurley and the order to sell the Transamerica Policy signed by Magistrate Judge Wall in the EDNY Action.

116.    On May 1, 2012, the Bankruptcy Court held a hearing on FLS's April 23, 2012 motion to restore the lift stay motion. Herbst accompanied Frankel to that hearing where Frankel

explained that the funds the trustee used to pay premiums came from individuals or entities on the Trust's behalf. Specifically, the transcript of that hearing reflects the following:

>Mr. Frankel: ...Mr. Herps (sic) is the trustee and he made the payment as trustee.
>
>The Court:     Well, the — there are no funds in this debtor.
>
>Mr. Foss:     Exactly.
>
>The Court:     Is that Correct?
>
>Mr. Frankel: Right.
>
>The Court:     So it has to be coming from Mr. Herps (sic), from his own pocket or from some other entity that
>
>Mr. Frankel: Your Honor, where Mr. Herps (sic) gets his money from I don't know that that's relevant, but he paid it, and it was not money that was borrowed by the debtor, it was money that was paid on the debtor's behalf. Sort of like a — I don't know, if it was a real estate case you'd call it a capital contribution, I don't know what you call it in the insurance context.

117.     Herbst's involvement in the bankruptcy proceedings constitutes bankruptcy fraud which he committed in furtherance of the overall conspiracy.

118.     On June 6, 2012, Judge Fuller signed an order lifting the automatic stay in the Bankruptcy Action to permit FLS to Auction the Transamerica Policy.

119.     Pursuant to Judge Fuller's Order, in June 2012 the auction directed by Judge Hurley was completed and the Transamerica Policy was sold to FLS for $1,194,522.00 (the "Auction Price").

120.     Thereafter, there followed a series of transfers, each acknowledged by Transamerica, by which ownership and beneficiary status were transferred from FLS to the present owner, SPV.

121.     On information and belief, SPV is unaware of the Trust paying any premiums after September of 2009, and the Trust certainly did not make any such payments from the account that was allegedly established for the purpose of making premium payments.

122.     FLS, SPV, and intervening successor entities affiliated with FLS paid policy premiums totaling $2,128,441.52 in the interval from December 2009 through April 2014.

## VI.     Malka Silberman Appears, Nachman Writes to Transamerica

123.     On April 6, 2014, Nancy, the insured, died in Queens County, New York.

124.     On information and belief, the Estate of Nancy was probated in Nassau County, New York.

125.     On April 22, 2014, Nachman mailed a letter on behalf of the N Bergman Insurance Trust, on letterhead listing the Trust's address in Cedarhurst, New York, to Transamerica in which he alleged that "someone is claiming ownership" in the Policy and that "[he] never transferred ownership nor changed beneficiaries on the above referenced policy."

126.     In this letter, sent through the United States Post Office, Nachman directed Transamerica not to pay out any claims by anyone purporting to be the owner or beneficiary of the Policy.

127.     Nachman further asserted that he had "initiated legal proceedings to ascertain my ownership."

128.     Upon information and belief, the statement concerning commencement of legal proceedings was in fact false and made for the sole purpose of frustrating SPV's rights under Transamerica documentation to receive the proceeds of the Policy.

129.     On information and belief, Malka Silberman ("Malka") is the wife of Jacob Herbst, the man who appeared at the March 13, 2012 bankruptcy hearing and testified under oath that he and he alone was the Trustee of the Trust.

130.     On May 9, 2014, Malka sent a letter to Transamerica from an address in Brooklyn, New York. On information and belief, Malka sent the letter by U.S. mail, facsimile and email.

131.     In her May 9th letter, Malka claimed that she has been the sole Trustee of the Trust since March 27, 2008 and attached the death certificate of Nancy, showing Ms. Bergman died in Queens, NY.

132.     Malka stated that the Trust had never sold or in any way relinquished rights to the Policy. She stated that any documents reflecting otherwise are forgeries.

133.     In her letter to Transamerica, Malka states that she has retained "Stewart Davis," as her attorney and that Mr. Davis is conducting an investigation and will take legal action on behalf of the Trust.

134.     On or about May 29, 2014, Stuart I. Davis, Esq. sent a letter to Transamerica on behalf of Malka "Individually" and as Trustee of the Trust.

135.     On information and belief, Attorney Davis sent this letter to Transamerica by U.S. Mail and facsimile.

136.     Attorney Davis's letter to Transamerica stated that someone had impersonated Nachman and attempted to sell the Policy to Michael Krasnerman.

137.     The letter stated that Malka had "just recently discovered that the Policy may have been fraudulently sold by the Trust without her knowledge" and made no mention of the

fact that her husband had just appeared in the Bankruptcy Court proceeding in the Eastern District of New York and claimed he was the Trustee.

138.    The letter attached a document purporting to be a "Renunciation and Appointment of Successor Trustees," naming Malka as the successor Trustee and executed by Nachman Bergman on March 27, 2008.

139.    On information and belief, Transamerica was entirely unaware of this alleged "transfer" of the role of Trustee to Malka until receiving Mr. Davis' letter in May of 2014.

140.    On information and belief, neither Malka, nor Nancy, nor Nachman ever alerted Transamerica to the purported transfer of the Trusteeship to Malka.

141.    Upon information and belief, the statements made in the various communications that Malka was the trustee since March 27, 2008, that Malka had but recently learned that the Policy on which every premium had been paid by a third party since September 2009 had been transferred to a third party — were in fact false and made for the sole purpose of frustrating SPV's rights under Transamerica documentation to receive the proceeds of the Policy.

142.    From the date of the Sale Agreement, November 4, 2009, to the filing of the Interpleader Action in the United States District Court for the District of South Dakota on June 13, 2014, FLS, SPV, and other related entities paid approximately $2,128,441.52 in insurance premiums due and payable pursuant to the terms of the Transamerica Policy.

**VII.    <u>Summary of Defendants' and Co-Conspirators' Claims Regarding Trusteeship</u>**

143.    From the time Kohn first approached FLS in October of 2009 regarding a potential sale of the Policy, up until and during the present action, Defendants the Estate, Nachman, Herbst, and their co-conspirators, have made numerous conflicting statements about who is the Trustee of the Trust and who owns the Policy.

144.     In October of 2009, Kohn, acting as broker for the Trust, identified the Trustee as Nachman in documents pertaining to the sale of the Policy to FLS. Kohn further certified that the Trust, and Trustee Nachman Bergman, had not directly or indirectly transferred any interest in the Policy to anyone.

145.     On October 30, 2009, in connection with the Trust's sale of the Policy to FLS, Nachman, acting as Trustee for the Trust, delivered to FLS several notarized documents which reflect his status as Trustee.

146.     On July 28, 2011, attorney Mark J. Nussbaum appeared by letter in the EDNY Action, in which letter attorney Nussbaum stated that he represented Nachman as Trustee of the Trust.

147.     On March 13, 2012, during the Trust's 341 hearing in the Bankruptcy Action, attorney Mark Frankel presented Jacob Herbst as the then Trustee of the Trust.

148.     At that hearing, Mr. Herbst testified under penalty of perjury that he was the Trustee of the Trust and that Nachman Bergman had resigned his post as Trustee at some time in late 2011.

149.     On April 22, 2014, two weeks after the insured Nancy died, Nachman mailed a letter to Transamerica in which he claimed to be Trustee of the Trust.

150.     On May 9, 2014, Malka mailed a letter to Transamerica in which she claimed that she has been the sole Trustee of the Trust since March 27, 2008, when Nachman purportedly transferred Trusteeship to her.

151.     On information and belief, Transamerica had no notice of either Malka or Jacob Herbst claiming to be Trustee of the Trust, until its receipt of Malka's letter in May 2014.

152.    Accordingly, the Defendants and their co-conspirators have created a factual quagmire in which three different people lay claim to the role of Trustee.

153.    On information and belief, the Defendants and their co-conspirators created this confusing situation with the intent to defraud Plaintiff and Transamerica in an attempt to wrongfully collect the $10,000,000.00 benefit of the Policy.

## VIII.   The Estate Asserts A Claim to Entitlement

154.    On or about September 18, 2015, the Estate asserted a claim in the United States District Court for the District of South Dakota seeking to disgorge from SPV proceeds that it otherwise would be entitled to receive from Transamerica.

155.    Upon information and belief, the Defendants herein, other than the Estate, recruited the Estate to assert such claim in the event that the South Dakota District Court rejects the claims of Malka and Nachman, as purported trustees.

156.    Upon information and belief, Nancy, through her Estate, continues to collaborate with the other Defendants to frustrate SPV's enforcements of its rights under the Policy and its receipt of the proceeds of the Policy for which it paid premiums since late 2009.

157.    Upon information and belief, such intent clearly appears from the fact that the cross-claim asserted on the Estate's behalf does not seek to disgorge proceeds of the Policy from Nachman or Malka, should such proceeds be paid to either or both of them.

158.    Upon information and belief, the Estate continues to collaborate with the other Defendants in connection with their efforts to frustrate SPV's collection of the proceeds due to SPV under the Policy and thereby to prevent it from receiving the contractual benefits it was supposed to obtain in the Fall of 2009.

## FIRST CLAIM FOR RELIEF — Fraud
### (Against All Defendants)

159.    The allegations of paragraphs 1 through 156 are incorporated herein by reference.

160.    All defendants are collectively and individually guilty of fraudulent misrepresentations and concealments of material facts, made with the intent to deceive and with the foreseeable effect of inducing FLS to purchase the Transamerica Policy on the secondary market.

161.    Should it appear in proceedings in which others claim that Nachman was not properly acting as Trustee of the Trust in connection with the 2009 Sale Agreement, then Defendants concealed that Nachman was not acting as Trustee of the N Bergman Insurance Trust and did not have the authority to sell the Transamerica Policy to FLS in 2009.

162.    Should it appear in proceedings in which others claim that Nachman was not properly acting as Trustee of the Trust in connection with the 2009 Sale Agreement, then Defendants further concealed the financial history of Nancy and the N Bergman Insurance Trust. Specifically, the Estate has alleged in the Interpleader action that the Policy is a Stranger-Owned Life Insurance Policy (a "STOLI"). If indeed the Policy is a STOLI, then the Defendants concealed that Defendants Hoffman, Aksler, Lichenstein, Weiss, Kohn, Herbst, Segal and Williamsburg Supreme were investors who were injecting funds into the Trust account under the Trust's name, which funds were then used to pay premiums.

163.    Further, the Defendants conspired to conceal the fact that the Policy was in grace and about to lapse, in order to force FLS to pay premiums on the Policy as soon as the Sale Agreement was executed.

164.    Each of the misrepresentations alleged in paragraphs 160 to 163, were made with the intent of inducing FLS to enter into an agreement to purchase the Transamerica Policy.

165. FLS justifiably relied on the misrepresentations alleged in paragraphs 160 to 163, and FLS would not have purchased the Transamerica Policy but for said misrepresentations. In such circumstances, the Plaintiffs, as their interests may appear, collectively and individually, reasonably relied on the aforesaid fraudulent misrepresentations and concealments in purchasing the Transamerica Policy from FLS and in paying millions of dollars in premiums to maintain such Policy in force to the time of Nancy's death, and have been damaged as the direct and proximate result thereof. Among other things, SPV has incurred expenses related to keeping the policy in effect and will continue to incur legal fees and related expenses to defend itself against the claims of the Estate and the Trust in connection with the purchase of what was fraudulently represented and warranted to be an unencumbered policy that the N Bergman Insurance Trust owned with an unrestricted power of sale.

WHEREFORE, SPV, LTT, FLS and SPV II request judgment as follows:

A.   $10,000,000.00, the benefit of FLS's bargain; and

B.   $2,128,441.52, the amount of premiums paid by FLS and/or SPV on the Transamerica Policy; and

C.   legal fees and related expenses FLS incurred in the action with respect to the Transamerica Policy commenced in the United States District Court for the Eastern District of New York, in the bankruptcy proceedings involving the Transamerica Policy in the United States Bankruptcy Court for the Eastern District of New York; and

D.   legal fees and related expenses SPV, FLS, LTT and SPV II incurred and continue to incur in this action; and

E.   punitive damages, plus the costs of this action; and

F.   for such other relief as the Court may deem just and proper.

Dated: October 29, 2015
      New York, New York

Respectfully submitted,

LOCKE LORD LLP

By: *s/Jeffrey S. Kramer*
Gregory T. Casamento
Jeffrey S. Kramer
Three World Financial Center
New York, New York 10281
(212) 415-8600
gcasamento@lockelord.com
jkramer@lockelord.com

HARRIS BEACH PLLC
Douglas A. Foss
Svetlana K. Ivy
99 Garnsey Road
Pittsford, New York 14534
Telephone: (585) 419-8800

*Attorneys for Plaintiffs SPV-LS LLC, Financial Life
Services, LLC, SPV II LLC, and Life Trading Trust*